GATY, ET AL. vs. GARRISON, ET AL.

1. An officer's return, showing that he executed process against a steamboat, by seizing the hull and other parts of the boat, as then lying at the wharf, partly taken to pieces, and in process of being broken up, is sufficient.

## ERROR to St. Louis Circuit Court.

### STATEMENT OF THE CASE.

At the trial of the cause plaintiff produced and read in evidence the record of Flint & Co. vs. S. B. Nathaniel Hale.   This record was of a case commenced against the S. B. N Hale by Flint & Co., under our statute respecting boats and vessels.   It was the first case against the S. B. N. H., and under the process in that case, the sheriff seized and sold the hull, tackle and furniture of said boat to the plaintiff.   It was admitted that the boilers which had belonged to the N. H. were in the possession of the defendant at the commencement of this suit, and worth $750.

The defendant claimed to have purchased the boilers from Sam'l Underwood, the master and sole owner of the N. H. prior to the levy of this process, and they offered evidence tending to prove that with the consent of all the creditors of N. H. except Flint & Co., the said master and owner of the H. broke up said boat, and sold the component parts to the highest bidders, before the commencement of any suit against the vessel.   That they were the highest bidders for the boilers, and bought, paid for and received them from the boat, and had them in their possession at the time when the warrant in the case of Flint & Co. was executed; and that the said boilers never were levied on by the sheriff, nor in the custody, actual or constructive, and were not in view of the spectators, nor on the boat, when the same was sold to plaintiff.   This was all the evidence; whereupon the court was prayed by the plaintiff to instruct the jury as follows:

1. If the plaintiffs did consent before the sale under Flint & Co.'s attachment, that Underwood might sell the boilers to defendant, and if he did sell the boilers to defendant after the levy of the attachment, and before the sale by the sheriff, nevertheless, the plaintiffs are enti-

tled to recover if the boilers were on the boat at the date of Flint & Co.'s attachment, and were sold by the sheriff to plaintiff by virtue of said attachment, unless the boilers were actually sold to the defendant by Underwood before the levy of the attachment.

2. That the defendants acquired no title by virtue of the purchase from Underwood, provided the sheriff had before then levied on the said boat, her apparel, tackle, and furniture, under Flint's attachment; and provided that at the date of the levy the boilers were actually on the boat or lying on the shore near to said boat and in view thereof, and provided the sheriff, by virtue of said attachment afterwards sold said boat and boilers to the plaintiff.

These instructions the court refused to give.

The plaintiffs then prayed the following, which was given:

3. That "if the attachment of Flint & Co. was levied on the boat on the 17th June, 1848, and if at the date of the levy the boilers were on the boat, and if Underwood, after the levy, sold to the defendants the two boilers, either with or without the consent of plaintiffs, and if afterwards the sheriff sold to the plaintiffs the boat, tackle, apparel, and furniture, and all that he could lawfully sell by virtue of the attachment, then defendants acquire no title by virtue of their purchase;" to the giving of which defendants excepted at the time.

Defendants then asked the following, which the court gave—the plaintiffs excepting:

1. The jury are instructed that under the evidence offered by plaintiffs they are not entitled to recover in the action; if the jury shall believe that at the time that the levy was made under the warrant in the case of Flint & Co. vs. S. B. N. Hale, the boilers were a part of said boat, and that they were not in the possession and custody of the sheriff at the time of the sale of said boat on the 24th July, '48.

2. That if the boilers in controversy were sold to the defendants by the captain and owner of the steamboat Nathaniel Hale, with the consent of the plaintiffs, they are estopped to set up any title thereto as against defendants. Refused.

3. If the jury believe from the evidence, that, by the advice and consent of the plaintiffs (being creditors of the said boat) the master and owner of the Nathaniel Hale took up and sold the component parts of the boat, and amongst other things the boilers, to the defendants; that at the time all of the other creditors of said boat excepting Flint & Co. consented that the said boat should be broken up and sold, then, unless said boilers were necessary to satisfy the demand of F. & Co., plaintiffs cannot set up against the defendants any title acquired by them at such sale by sheriff. Refused.

4. That if the boilers were at the time of the sale not in possession of the sheriff nor under his custody or charge, but held adversely by defendants, and that the boilers were not present at the place at which the boat was sold, then no title to them passed by the sheriff's sale and bill of sale. Refused.

Court having refused these instructions, defendants excepted.

There was a verdict for defendants. Plaintiffs moved to set same aside for the reasons: 1, It was against law; 2. Against evidence; 3. Against the weight of evidence; 4. Because the court gave defendants instructions; 5. Because the court refused plaintiffs instructions.

Court overruled; plaintiffs excepted and brings the case here by writ of error.

CROCKETT & KASSON, for plaintiffs in error.

This is an action of trover, and may be maintained by either the owner of the property or one having the right of possession.

The plaintiffs claim as purchasers at the judicial sale of the steamboat Nathaniel Hale and all her appurtenances, tackle and furniture; "all that belonged or appertained to it, which the sheriff could lawfully sell, by virtue of the attachment."

I. The bill of sale included machinery and every thing else belonging to the boat.

The absence of the property at the time of sale, or of a portion of it, does in no respect prevent

a good title from passing to the purchaser. This was expressly ruled in this court in Kean vs. Newell, 1 Mo. R, 542.

II. The 1st instruction for plaintiff was wrongfully refused: it is good law, because if the plaintiff gave such consent, they gave it in another capacity entirely, representing a totally different interest. As well might it be declared for law, that the holder of a title to land, who has a doubtful title, and sells it by general release, and afterwards purchase a sound and distinct title of another class should be estopped to bring his ejectment against his release of the former tit'e. These plaintiffs by the sale became holders of a new title, for a new consideration, and took all the title and rights of their vendors, as they were at the first levy of the attachment.

It would be oppressive to make it extend in the same manner that subsequently acquired title to real estate enures to a former warrantee.

III. The 2nd instruction was in like manner good law; because the title which should be after-wards communicated to the purchaser at the public sale incepted at the time and by virtue of the levy; and if said property was then seized and intermediately sold to the defendants, they of necessity took it subject to the lien of the process; and if that should be avoided, their title would stave; if carried into final effect, their title would be worthless. In this case it *was* effectuated, and they therefore acquired no title by their unauthorized purchase from Underwood. Both these instructions should have been given.

IV. The first instruction given for defendants is erroneous in several particulars:

1. Because it does not confine the belief of the jury to a belief founded upon the evidence.

2. Because it requires them to find that the boilers were "a part of the boat" at the time of the levy; which was likely to mislead the jury, thinking they were not so, if they had ever been upon the boat, but removed from their proper position, and separated from the running office.

3. Because their being "a part of the boat" is fairly a question of law, with reference to which the court gave the jury no instructions.

4. Because, as already shown, it was not necessary that the sheriff should have the boilers actually in his custody and possession at the sale of the 24th July 1848.

V. Every essential component structure, without which a steamboat cannot be made capable of the uses of a steamboat, and is not recognized as a steamboat, so long as such structure is distinctly identified as of such boat to which it is essential, and especially if known to be so by the possessors of it, is itself subject to the process *in rem* under the act of this State, in like manner as the complete boat; and it is so whether the hull be on shore, and the engine in the river; or the hull in the river and the engines on shore.

The question is not one of locality, but of identical and indispensable part of the structure and edifice of a steamboat. And the law will not permit the evasion of its provisions for securing the creditor, by winking at the rupture and removal of its chief component parts.

## GANTT, for defendants in error.

1. The instructions asked by plaintiffs were properly refused, because:

1. Said instruction is inconsistent with itself.

2. It is not warranted by the testimony.

3. The said instruction would have necessarily bewildered the jury.

4. It is not expressive of any distinct intelligible idea.

II. The 2nd instruction was properly refused, because it was not warranted by the evidence; and because it leaves without decision the only points which rose in the case.

III. The instruction given by the court at the instance of plaintiffs, does meet all the points presented by the evidence, and gives to the plaintiffs the benefit of a more indulgent construction of the law than they are entitled to: said instruction being indeed erroneous, but erroneous because too favorable to plaintiffs.

IV. The instruction asked for by the defendants, and given by the court contained a correct exposition of the law. It merely tells the jury that the sheriff cannot, without making a levy on a chattel or having it in his custody, convey it to a purchaser under legal process.

*Gaty et al. vs. Garrison et al.*

V: The 2nd and 3rd instructions asked by the defendants were refused by the court, and it may have been correctly refused. The 4th also refused was good law, and it was error to refuse it; but of this the plaintiffs cannot complain.

VI. The verdict was well warranted by the law and the evidence, and the judgment of the court upon it should be affirmed.

Authorities—Tidd's Prac. 922 and following: 1 Archb. Prac. 293 and following: Kean vs. Newell, 1 Mo. R. 754; Rev. C. 1845, p. 397, 478 and 489, sec. 67.

BIRCH, J., delivered the opinion of the court.

The return of the sheriff upon the original writ of Flint & Co., under the order and sale in whose suit the plaintiffs claim to have purchased the property in question, was that he had executed the writ "by seizing the hull and other parts of the steamboat Nathaniel Hale, as said boat then lay at the wharf," and that "the said boat at the time of the said seizure, was partly taken to pieces, and was in the process of being broken up." The subsequent order in the suit was to "sell said boat with her tackle, apparel and furniture," and the return shows that the sale was made "pursuant to the order." What, therefore, was that order, and what did it direct? Clearly it could have been nothing more than to sell the boat, "as she lay at the wharf, at the time of the seizure, partly taken to pieces, and in the act of being broken up"—for such was the seizure, such the return, or such in short, this levy.

Adding these facts, therefore, to those embodied in the statement hereto prefixed, it is deemed proper enough to premise that no matter where the boilers were, they were unquestionably subject to be levied upon, because they were subject to the lien conferred by the "act concerning boats and vessels." The return of the sheriff, however, may well be regarded as sufficiently inexplicit to have authorized it to be left to a jury to say, under the conflicting testimony subsequently introduced, whether in fact the boilers were at the time of the levy a part of the boat, and were therefore levied upon by the sheriff.

That question having been substantially included in the instructions which were given to the jury, their finding, under the conflicting testimony alluded to respecting the situation or location of the boilers at the time of the levy, cannot, of course, be here reviewed or disturbed.

The instructions which were given put it intelligibly and properly enough to the jury to decide, firstly, whether the boilers were on the boat at the time of the seizure? If so, they were substantially instructed, they were included in the general terms of the levy or return, and would pass under the terms which conveyed "the tackle, apparel and furniture," and that they would consequently find for the plaintiffs.

But, secondly, if the boilers were not a part of the boat at the time of the seizure or levy, and not in the possession or custody of the sheriff at the time of the sale, they could not be considered as included in the general terms of the return, or of the bill of sale subsequently executed to the plaintiffs.

Limiting our enquiry, therefore, entirely to the sufficiency of the levy, as disclosed by the return and disputed about in the oral testimony which was relied on to explain it, we are of opinion that the jury was sufficiently instructed, and that the cause having been tried well enough, the judgment of the circuit court should be, as it is affirmed.